UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

Nos. 25-5152, 25-5233, 25-5247
(Civ. A. No. 25-0943)

COALITION FOR HUMANE
IMMIGRANT RIGHTS,      *et al.*                    Appellants,

    v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,                    Appellees.

**APPELLEES' COMBINED (1) OPPOSITION TO
SUPPLEMENTAL MOTION FOR STAY OR INJUNCTION
PENDING APPEAL AND FOR EXPEDITED
<u>CONSIDERATION; AND (2) MOTION TO DISMISS</u>**

Defendants-Appellees hereby oppose Plaintiffs-Appellants' supplemental motion for a stay or injunction pending appeal ("Supp. Mtn.," Doc. No. 2124591) and oppose Plaintiffs-Appellants' Motion for Expedited Consideration of Appeal (Doc. No. 2124610), and further move to dismiss two of the three appeals currently before this Court. Appellants have failed to satisfy the requirements of Federal Rule of Appellate Procedure ("Rule") 8 and have failed to meet the stringent standards required for the injunction they seek. And because Appellants have not established irreparable harm, there is no basis for expedited

consideration.   Furthermore, two of the appeals currently before this Court (Case No. 25-5233, Case No. 25-5247) should be dismissed as there is no basis or record on which this Court can rule.

## INTRODUCTION

On March 12, 2025, the United States Department of Homeland Security ("DHS") published an Interim Final Rule ("IFR") which simply added a new registration form to a long list of currently acceptable forms for aliens to submit to comply with longstanding statutory registration and fingerprinting requirements.  90 Fed. Reg. 11793 (Mar. 12, 2025).

In the district court, Appellants moved for emergency relief under the Administrative Procedure Act ("APA"), seeking a stay of the effective date of the IFR or, in the alternative, to enjoin the IFR (the "First Injunction Motion").  After the parties briefed the motion and the district court heard argument, the district court denied the motion, finding that Appellants lacked associational or organizational standing.  *See* Mem. Order at 6-20 ("Apr. 10 Mem. Order," Ex. A to Supp. Mtn.).  The district court did not reach the other elements of the injunction analysis.  *Id.*

As the district court subsequently noted, "Plaintiffs have been busy" ever since.  (R.64 at 1).  Appellants noticed an appeal from the

district court's decision denying the First Injunction Motion, and then moved for an injunction pending appeal before the district court. Mtn. for Stay at 6. Rather than wait for the district court to rule, however, Appellants then filed a motion in this Court, in violation of Rule 8(a)(2)(A), seeking a stay or injunction pending appeal. *See* Doc. No. 2114110, Case No. 25-5152 (the "First Appeal").

While the First Appeal was still pending, the district court denied the Appellants' motion for an injunction pending appeal that was before it. (R.53). Appellants then filed yet another motion for preliminary injunction before the district court. (R.54, the "Second Injunction Motion"). Simultaneously, and without waiting for this Court to rule on the First Appeal, Appellants noticed an appeal of the district court's denial of their motion for an injunction pending appeal. *See* Case No. 25-5233 (the "Second Appeal").[1] Appellants also moved this Court to hold the First Appeal in abeyance. Doc. No. 2120804, Case No. 25-5152.

---

[1] Appellees are aware of no authority that permits appealing a district court's denial of a motion to stay a case pending appeal, when said appeal has already been taken.

3

This Court granted that abeyance and consolidated the First and Second Appeals.  Doc. Nos. 2122386, 2122431, Case No. 25-5152.

Without waiting for rulings by either court on any of the three pending actions (the First Appeal, the Second Appeal, and the Second Injunction Motion), Appellants then noticed an appeal with respect to the Second Injunction Motion, even though the district court had not denied it.  *See* Case No. 25-5247 (the "Third Appeal").[2]  Appellants then filed the present motion and also moved to consolidate all three appeals and lift the abeyance this Court had granted less than two weeks previously.  *See* Doc. No. 2124610, Case No. 25-5247.  While these events were occurring, Appellants also moved the district court for an expedited summary judgment schedule (R.55), which the district court denied; the district court has instead stayed all proceedings below pending the resolution of the now three appeals.  (R.64).

---

[2]     Appellants premised the Third Appeal on a "constructive denial" of the Second Injunction.  (R.62).  As with the Second Appeal, Appellees are aware of no authority that permits an appeal taken from inaction on a motion for preliminary injunction without any decision for this Court to review.

Now before this Court are three separate appeals, arising from two injunction motions—only one of which has been denied—as well as the district court's denial of a motion for a stay pending appeal. For all Appellants' procedural machinations, however, the core question presently before this Court is relatively straightforward: Have Appellants met the stringent standards for injunctive relief warranting a stay pending the resolution of their appeals? As Appellees demonstrated previously (Doc. No. 2117122, Case No. 25-5152) and now demonstrate again, Appellants have not met that burden. This Court should therefore deny the motion for a stay.

## STATEMENT OF FACTS

The Immigration and Nationality Act ("INA") has long contained statutory requirements for aliens in the United States to register their presence. 8 U.S.C. §§ 1301-1306. These registration requirements were incorporated from the Alien Registration Act of 1940 and predate the INA. *See* Pub. L. 76-670, 54 Stat. 670.

On January 25, 2025, President Trump issued an Executive Order directing the Secretary of Homeland Security, in coordination with the Attorney General and the Secretary of State, to "(a) Immediately

5

announce and publicize information about the legal obligation of all previously unregistered aliens in the United States to comply with the requirements of [the registration statutes]; (b) Ensure that all previously unregistered aliens in the United States comply with the requirements of [the registration statutes]; and (c) Ensure that failure to comply with the legal obligations of [the registration statutes] is treated as a civil and criminal enforcement priority." Exec. Order No. 14159, Protecting the American People Against Invasion (Jan. 20, 2025), 90 Fed. Reg. 8443, 8444 (Jan. 29, 2025). On March 12, 2025, DHS published the IFR to allow for the use of a newly created Form G-325R, Biographic Information (Registration) ("G-325R"), as a means of registration, and USCIS Proof of Alien G-325R Registration as evidence of registration. *See* 90 Fed. Reg. 11793, 11795-11796, 11800.

While the Form G-325R has been added to the registration scheme, the registration scheme itself is not new. One of the many available manners through which aliens can register is through the visa issuance process. 8 U.S.C. § 1201(b); 8 U.S.C. § 1301. All aliens 14 years of age or older who remain in the United States 30 days or longer and

have not been registered or fingerprinted as part of their visa issuance under § 1201(b) must register and be fingerprinted.  8 U.S.C. § 1302.

The Secretary of Homeland Security is directed by statute to "prepare forms for the registration and fingerprinting of aliens," which "shall contain inquiries with respect to (1) the date and place of entry of the alien into the United States; (2) activities in which he has been and intends to be engaged; (3) the length of time he expects to remain in the United States; (4) the police and criminal record, if any, of such alien; and (5) such additional matters as may be prescribed." 8 U.S.C. § 1304(a).  The Secretary also has authority to prescribe "special regulations and forms for the registration and fingerprinting of" certain classes of aliens, including "aliens of any other class not lawfully admitted to the United States for permanent residence." 8 U.S.C. § 1303(a); *see also Narenji v. Civiletti*, 617 F.2d 745, 747 (D.C. Cir. 1979) (recognizing the use of authority under 1303(a) to require special registration for post-secondary student from Iran).

There are statutory criminal penalties related to registration. Willful failure to register or to be fingerprinted is punishable by a fine of up to $5,000 and imprisonment up to six months. 8 U.S.C. § 1306(a);

*see also* 18 U.S.C. §§ 3559, 3571. If someone files a registration application "containing statements known by him to be false, or . . . procures or attempts to procure registration of himself or through another person by fraud," that person may be punished by a fine of up to $5,000 and imprisoned up to six months. 8 U.S.C. § 1306(c); *see also* 18 U.S.C. §§ 1001, 1546, 3559, 3571. Aliens who have been registered and fingerprinted are to "be issued a certificate of alien registration or an alien registration receipt card." 8 U.S.C. § 1304(d). Aliens eighteen years of age and over must carry and be in possession of their alien registration or registration receipt card. 8 U.S.C. § 1304(e). Noncompliance is a misdemeanor punishable by a fine of up to $5,000 and imprisonment for not more than thirty days. 8 U.S.C. § 1304(e); 18 U.S.C. §§ 3559(a)(8), 3571(b)(6). Finally, each alien required to be registered under the INA must notify DHS in writing of each address changes within ten days. 8 U.S.C. § 1305(a); 8 C.F.R. § 265.1. Noncompliance is a misdemeanor punishable by a fine of up to $5,000 and imprisonment for not more than thirty days. 8 U.S.C. §1306(b); 18 U.S.C. §§ 3559(a)(8), 3571(b)(6). In addition, failure to comply with the change-of-address notification requirements of 8 U.S.C. §1305 is a

8

ground of removability unless the alien establishes that such failure was reasonably excusable or was not willful. *See* 8 U.S.C. § 1227(a)(3)(A).

The regulations currently designate eleven different immigration forms as registration forms. 8 C.F.R. § 264.1(a). Examples include an I-94, Arrival-Departure Record; an I-485, Application to Register Permanent Residence or Adjust Status; and an I-95, Crewmen's Landing Permit. *Id*. There are twelve items that are evidence of registration. 8 C.F.R. § 264.1(b). Examples include an I-94, Arrival-Departure Record; an I-551, Permanent Resident Card; an I-766, Employment Authorization Document; or an I-862, Notice to Appear, issued to an alien to initiate removal proceedings. *Id*. The IFR allows for the submission of a Form G-325R as a means to register under 8 C.F.R. § 264.1(a) and the USCIS Proof of Alien G-325R Registration as evidence of registration under 8 C.F.R. § 264.1(b).

In sum, aliens have been required to register with the federal government since 1940, and those requirements have remained in the law ever since. *See* 8 U.S.C. §§ 1301-1306. And although the implementing regulations have varied over time—and have not consistently provided a registration form applicable to all aliens—the

underlying statutory requirements have remained unchanged for over eighty years.  *See* Mem. Order at 3-4.

Plaintiffs filed suit to block the implementation of the IFR and the use of Form G-325R as a means of registration.  After briefing, the district court concluded that Appellants had not demonstrated standing and, as such, had not proven a likelihood of success on the merits.  *See generally* Apr. 10 Mem. Order.  Although the parties briefed the remaining three prongs of the preliminary injunction analysis—irreparable harm, balance of the equities, and public interest—the district court did not reach those issues as it found the lack of standing to be dispositive.  *Id.*  Subsequently, and in response to Appellants' motion for a stay pending the appeal, the district court determined that they had "remedied . . . concerns about associational standing, [but] still fail to show irreparable harm."  Jun. 12 Mem. Order (Ex. B to Supp. Mtn.), at 5 (R.53).

## STANDARD OF REVIEW

An appellant seeking an injunction pending appeal must meet "stringent standards" to obtain relief.  *See Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); D.C.

10

Circuit Handbook of Practice and Internal Procedures 33 (2014). The four-factor analysis applicable to preliminary injunctions also applies to injunctions pending appeal: the likelihood of success on the merits, the possibility of irreparable harm, the balance of the equities, and the public interest. *Id.* Where, as here, appellants seek an injunction pending appeal of a denial of a preliminary injunction in the district court, they face "the difficult task of coming forward with evidence and argument showing that it is likely that the district court abused its discretion in denying a preliminary injunction." *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (cleaned up, citations omitted).

Before seeking a stay pending appeal in the circuit, appellants must first seek a stay from the district court and fail to obtain relief, or they must demonstrate that it would have been impracticable to do so. Fed. R. App. P. 8(a)(2)(A). Where an appellant fails to make that showing, this Circuit routinely denies such motions. *See, e.g.*, *Powder River Basin Res. Council v. Dep't of Interior*, No. 24-5268, 2025 WL 312649, \*1 (D.C. Cir. Jan. 24, 2025); *Carter v. United States*, No. 03-5067, 2003 WL 21659644, \*1 (D.C. Cir. July 10, 2003).

## ARGUMENT

### I.    Appellants' Motions and Appeals Are Procedurally Improper And Should Be Dismissed

As discussed above, in the First Appeal, Appellants moved this Court for a stay pending appeal before the district court had the opportunity to rule on a motion for injunction pending appeal.  The Second Appeal is premised on the district court's eventual denial of that same motion for injunction pending appeal.  And the Third Appeal is premised on the "constructive denial" of the Second Injunction Motion. Appellants have therefore at the very least failed to satisfy the requirements of Rule 8(a)(2)(A)(i), to say nothing of the bases for the subsequent appeals.  Appellants' initial effort to obtain a stay before this Court in the First Appeal was premature, as the district court had not—at that time—ruled on the motion for a stay pending appeal before it. And although the district court has since ruled on that motion, Appellants made no further effort to obtain a stay pending appeal in the district court before seeking that same relief in both the Second and Third Appeals, again falling short of the requirements of Rule 8. Appellees ask this Court to deny the pending motion on these procedural

12

grounds as premature. *See Powder River*, 2025 WL 312649, at *1; *Carter*, 2003 WL 21659644, at *1.

Additionally, the Second and Third Appeals should be dismissed in their entirety as procedurally improper. An appeal may only be taken from either a judgment or an appealable order. *See* Fed. R. App. P. 3(c)(1)(B); 28 U.S.C. § 1291. Here, the Second Appeal is premised on the district court's decision not to grant a stay pending appeal, which is neither a final decision nor an appealable order. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 379 (1987) (emphasizing importance of "finality rule" of 28 U.S.C. § 1291). The Third Appeal, meanwhile, is not premised on any decision at all, but on the "constructive denial" of an injunction. The complete lack of a decision or order certainly cannot qualify as a final decision or appealable order sufficient to satisfy § 1291. Additionally, Appellants did not seek permission to appeal in either instance as a putative interlocutory order. Accordingly, both the Second and Third Appeals should be dismissed.

## II. <u>Appellants Have Not Established Irreparable Harm</u>

"This court has set a high standard of irreparable injury" sufficient to warrant an injunction or stay. *Chaplaincy of Full Gospel Churches v.*

*England*, 454 F.3d 290, 297 (D.C. Cir. 2006). The injury must be "both certain and great" as well as "beyond remediation." *Id.* (citing *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). Furthermore, the alleged harm must "directly result from the action which the movant seeks to enjoin." *Wisc. Gas*, 758 F.2d at 674. Here, Appellants rely on claims of the pending arrest and prosecution of their members, the threat of First and Fifth Amendment harm, the possibility of removal, and the alleged harm to Appellant CHIRLA's "core programmatic work." Supp. Mtn. at 9-17. None of these alleged harms satisfy this Court's high bar.

*First*, though Appellants allege that the prosecution of their members is "impending" (Supp. Mtn. at 9), they fail to connect the prosecution with the action they seek to enjoin: the IFR and the use of Form G-325R. As Appellants concede, the prosecutions of which they complain stem from violations of the immigration statutes, not of the IFR or the Form G-325R. Again, the statutes criminalizing the failure to register and the failure to carry proof of registration have existed in some form for over eighty years, and are set forth in 8 U.S.C. §§ 1301-1306. The harm of which Appellants complain is the "harm" of not

14

complying with the law.  And to be clear, nothing in either the IFR nor the Form G-325R changes the statutory requirements applicable to all aliens; it does not alter the landscape in terms of who is subject to the registration requirements, what the penalties for noncompliance are, or how registration information is used.  Additionally, at least at the district court level, Appellants offered no proof or even averment that their members were the ones facing imminent prosecution, instead citing charges against non-members.  *See* Jun. 12 Mem. Order at 8-9 (R.53).

*Second*, as Appellants concede—and as the district court found compelling—they do not plead a cause of action or constitutional claim based upon their alleged First and Fifth Amendment injuries; they have therefore "expressly disclaimed any constitutional challenge."  Jun. 12 Mem. Order (R.53) at 11; *see also De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (holding that preliminary injunction is limited to "grant[ing] intermediate relief of the same character as that which may be granted finally."); *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("A court's equitable power lies only over the merits of the case or controversy before it. When

15

a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."). In other words, Appellants attempt to claim constitutional injuries without alleging a constitutional violation. In addition, this Circuit has found that movants must "do more than merely allege a violation of freedom of expression in order to satisfy the irreparable injury prong," but must establish that they are "engaging in constitutionally protected behavior." *Chaplaincy*, 454 F.3d at 301. But Appellants do not do so; Appellants offer no support for the implied concept that they have a constitutionally protected right not to comply with the registration statutes. Similarly, Appellants concede (Supp. Mtn. at 14) that any Fifth Amendment claims are not ripe until the privilege is asserted; there can therefore be no Fifth Amendment harms.

*Third*, Appellants claim irreparable injury by the abstract possibility that their members may face removal proceedings or be prevented from pursuing immigration relief, but again, they fail to tie these alleged harms to the action they seek to enjoin. As addressed above, the prospect of removal connects directly with the prosecution for failure to comply with the long-standing statutory requirement to

16

register; it does not arise directly from the IFR or the use of Form G-325R.  This is to say nothing of the fact that any such removal is merely hypothetical and would require several intervening steps "involving discretion and randomness" before it becomes certain and great.  *See* Jun. 12 Mem. Order (R.53) at 9.

*Finally*, Appellant CHIRLA reasserts its theory that it faces harm to its "core programmatic work" of providing legal services.  Supp. Mtn. at 15-16.  But the harms to which it points are in fact directly within the core business of CHIRLA:  assisting aliens to comply with the statutes. CHIRLA asserts (Supp. Mtn. at 16-17) that it will need to assist current clients with registering, that it will need legal staff to consult with those clients, and that it will need to answer questions about registration, but it fails to differentiate these activities from what CHIRLA is already doing.  If anything, the IFR will cause CHIRLA to expand its core functions, not block them.  *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 920-21 (D.C. Cir. 2015) (finding no organizational injury from using resources for litigation, advocacy, or education of its members); *cf. PETA v. Dep't of Agric.*, 797 F.3d 1087, 1094-95 (D.C. Cir.

2015) (finding that government action which blocks the organization's mission can give rise to standing).

Appellants have not established an irreparable harm sufficient to justify a preliminary injunction, let alone one that would support the extraordinary relief of a stay pending the resolution of their appeal. This Court should therefore deny the pending motion.

## III.  Appellants Are Unlikely to Succeed on the Merits

Appellants are unlikely to succeed on the merits of their appeal, because they lack standing and because the IFR does not violate the APA. Additionally, at this stage of the litigation, where Appellants seek the extraordinary relief of an injunction pending appeal, this Court applies an "abuse of discretion" standard to the question of success: Appellants must show that it is likely that the district court abused its discretion in denying the preliminary injunction and determining that Appellants lacked standing. *John Doe Co.*, 849 F.3d at 1131. And the analysis of likelihood of success is a "stringent requirement[.]" *Archdiocese of Wash. v. WMATA*, 877 F.3d 1066, 1066 (D.C. Cir. 2017) (per curiam).

### A.    Appellants Lack Standing to Pursue Their Claims

Appellants challenge the IFR and assert claims on behalf of a broad segment of the immigrant population, both legal and undocumented, despite not being directly subject to the IFR themselves. As such, Appellants have failed to establish associational standing. *See* Apr. 10 Mem. Order at 6-20. Appellants must now demonstrate that the district court abused its discretion in reaching that conclusion.[3]

Appellants lack associational standing because no individual member has independent standing to challenge the IFR. In reaching this conclusion, the district court based its decision in part on a determination that that the use of pseudonymous hearsay—and double-hearsay—affidavits and the "mere requirement to abide by the law" did not suffice to establish a concrete injury. Apr. 10 Mem. Order at 13-15. In response, Appellants first offer additional pseudonymous double-hearsay declarations (Supp. Mtn., Exs. I-T) and again insist that they

---

[3]    Appellants incorrectly assert that the district court concluded that they had "established associational standing," when the district court instead merely found that, in the context of their motion to stay the case pending appeal, Appellants had provided additional evidence that resolved the district court's earlier concerns. In any event, this Court can review those issues *de novo*.

19

suffice to establish harm. Appellants cite to additional cases in support of this approach, but none of these cases actually decided the question of whether pseudonymous declarations could suffice, but rather assumed the declarations were sufficient, apparently for the lack of any opposition. *See Make the Rd. New York v. McAleenan*, 405 F. Supp. 3d 1, 32 (D.D.C. 2019) (accepting pseudonymous declarations without any indication of opposition from the opposing party and without addressing the questions of hearsay and credibility); *NAACP v. Trump*, 298 F. Supp. 3d 209, 225 & n.10 (D.D.C. 2018) (accepting pseudonymous declarations and noting that "the government does not seriously dispute" the declarations).

More importantly, the question of whether or not to accept a certain type of evidence is soundly within the district court's discretion, and the existence of conflicting case law on the appropriateness of pseudonymous and hearsay declarations means that the district court did not abuse its discretion in deciding not to accept such declarations to deny the First Injunction Motion. *See, e.g.*, *Young America's Foundation v. Gates*, 560 F. Supp. 2d 39, 50 (D.D.C. 2008) (highlighting "certain difficulties" in basing associational standing on anonymous

declarations); *Doe v. Von Eschenbach*, Civ. A. No. 06-2131 (RMC), 2007 WL 1848013, at *3 (D.D.C. June 27, 2007) (finding it "impossible [] to litigate standing" with a pseudonym).

But even leaving this evidentiary question aside, Appellants offer no further basis from which this Court can now find the existence of a concrete injury. Appellants are not "directly regulated parties" merely because their members must now submit the Form G-325R and carry proof of registration, because both the requirement to register and the requirement to carry proof of registration are not new. *See* 8 U.S.C. §§ 1301-1306. As the district court correctly determined, the "injury" of which Appellants complain is nothing more than "the mere requirement to abide by the law" which does not suffice for standing. Apr. 10 Mem. Order at 14-15.

Any attempt to distinguish *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), is unavailing because Appellants make no effort to grapple with the central holding from that case: that the harm alleged "has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 440; *see also Doe 1 v. Apple Inc.*, 96 F.4th 403, 410-11 (D.C. Cir. 2024) (applying the *TransUnion*

standard of "a close historical or common-law analogue for [the] asserted injury" in analyzing standing). Instead, Appellants merely reassert the conclusory opinion that their members are subject to a concrete harm and the incorrect assertion that the IFR imposes new burdens. But the actual harm at issue here is the "harm" of complying with the INA's statutory requirements which have been in place for nearly a century. There is no historical analogue for the harm of compliance with the law.

Appellants lack standing, as the district court correctly determined. The district court's determination was not an abuse of discretion, and any arguments to the contrary certainly do not meet the "stringent requirements" of demonstrating a likelihood of success.

## B. The Notice and Comment Requirement Does Not Apply

Appellants' assertion that the IFR violates the APA, while not reached by the district court, fares no better in the analysis of whether they are likely to succeed on the merits.

The APA specifically exempts from its notice and comment requirements, as relevant here, "rules of agency organization procedure, or practice." 5 U.S.C. § 553(b)(A); *see AFL-CIO v. NLRB*, 57 F.4th 1023, 1034-35 (D.C. Cir. 2023). Procedural rules are ones that are "primarily

directed toward improving the efficient and effective operations of an agency." *AFL-CIO*, 57 F.4th at 1034 (citation modified). A "'critical feature' of the procedural exception 'is that it covers agency actions that do not themselves alter the rights or interests of parties, although it may alter *the manner in which the parties present themselves* or their viewpoints to the agency.'" *JEM Broad. Co., Inc. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994) (quoting *Batterton v. Marshall*, 648 F.2d 694, 707 (D.C. Cir. 1980)) (emphasis added). Moreover, although a procedural rule generally may not "encode[] a substantive value judgment or put[] a stamp of approval or disapproval on a given type of behavior," *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1047 (D.C.Cir.1987), "the fact that the agency's decision was based on a value judgment about procedural efficiency does not convert the resulting rule into a substantive one." *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 282 (D.C. Cir. 2000).

The statutory registration obligation has existed for more than eighty years, and the IFR merely provides a new means by which an alien can comply with that requirement; in other words, an alteration to "the manner in which [aliens] present themselves" to DHS. *See JEM*

23

*Broad. Co.*, 22 F.3d at 326. The IFR does not affect individuals' substantive interests or encode any value judgments about their behavior. *See AFL-CIO*, 57 F.4th at 1042 (concluding that a provision was not a procedural rule "because it encodes a substantive value judgment about the type of [union election] observers that best serve" the agency's own policy goals) (citation modified); *JEM Broad Co.*, 22 F.3d at 326 ("The issue . . . is one of degree, and our task is to identify which substantive effects are sufficiently grave so that notice and comment are needed to safeguard the policies of the APA") (cleaned up). Nor does the IFR establish any sort of new substantive policy but is instead nothing more than an improvement in the agency's own procedures, intended to "improve registration outcomes" for different groups of aliens by "add[ing] another method . . . for compliance with existing statutory registration requirements." 90 Fed. Reg. at 11796; *see id*. at 11797 ("This rule fills a gap in registration by adding an online option to comply with existing statutory registration requirements.").

Indeed, excepting this IFR from notice and comment rulemaking is not an anomaly in the history of 264.1. In fact, the history of the regulation is replete with similar additions of documents. *See* 82 Fed.

24

Reg. 94231-01, 94233 (Dec. 23, 2016) (removing NSEERS based on exception to notice and comment as "impracticable, unnecessary or contrary to the public interest."); 78 Fed. Reg. 18457-01 (Mar. 27, 2013) (adding a valid, unexpired nonimmigrant DHS admission or parole stamp in a foreign passport as evidence of registration based on exception for "rules of agency organization, procedure, or practice"); 39 Fed. Reg. 10885 (March 22, 1974) (adding form I-221S (Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien) to § 264.1(b) without notice and comment as "adding a form to the listings"); 35 Fed. Reg. 12268 (July 31, 1970) (adding Form I-485A (Application by Cuban Refugee for Permanent Residence to § 264.1(a) without notice and comment as "relat[ng] to agency procedure."); 30 Fed. Reg. 13862 (Nov. 2, 1965) (amending listing of Forms I-90 (Application by Lawful Permanent Resident Alien for Alien Register Receipt) and I-102 (Application by Nonimmigration alien for Replacement of Arrival Document or for Alien Registration) under Section § 264.1(b) without notice and comment as "relat[ing] to agency procedure"); 26 Fed. Reg. 3455 (April 22, 1961) (waived fingerprinting without notice and comment because the amendment "relieve[s] restrictions and confer[s]

benefits upon persons affected thereby."); 25 Fed. Reg. 10495 (Nov. 2, 1960) (added the Form I-590 (Registration for Classification as Refugee-Escapee) to § 264.1 without notice and comment as "relat[ing] to agency procedure and management.").

Thus, because the IFR merely improves existing agency processes to make available an additional method to register, the IFR is primarily directed toward the manner by which aliens "present themselves or their viewpoints to the agency." *Glickman*, 229 F.3d at 280; *see Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 5 (D.C. Cir. 2011) (even "a rule with a 'substantial impact' upon the persons subject to it is not necessarily a substantive rule" (citing *Pub. Citizen*, 276 F.3d at 640-41)); *Lamoille Valley R. Co. v. I.C.C.*, 711 F.2d 295, 328 (D.C. Cir. 1983) (holding that an order changing the schedule for an adjudication, including when parties were to submit briefing, was a procedural rule); *Ranger v. FCC*, 294 F.2d 240, 244 (D.C. Cir. 1961) (while holding that a rule was procedural, noting that "no substantive rights were actually involved by the regulation itself" even if "failure to observe it might cause the loss of substantive rights"). Moreover, because the IFR simply offers an additional option to comply with a pre-existing statutory duty,

the IFR lacks a "substantive effect[] sufficiently grave so that notice and comment are needed to safeguard the policies of the APA." *JEM Broad Co.*, 22 F.3d at 326.

Accordingly, the IFR does not violate the notice and comment requirement, and Appellants are unlikely to succeed on the merits.

## C.     The IFR is not Arbitrary or Capricious.

The scope of APA review is narrow and deferential, and a court cannot substitute its judgment for that of the agency. *See FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency need only articulate "a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (internal quotation and citation omitted). The agency appropriately relies on its experience in exercising its judgment. *See id.* at 29 ("It is not infrequent that the available data does not settle a regulatory issue[,] and the agency must then exercise its judgment in moving from the facts and probabilities on the record to a policy conclusion."). Thus, a reviewing court's task is only to determine whether an agency has engaged in "reasoned decisionmaking." *Michigan v. EPA*, 576 U.S. 743,

27

750 (2015) (internal citation and quotation marks omitted); *see Prometheus Radio Project*, 592 U.S. at 423 ("A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision").

The IFR easily meets that deferential standard. The IFR was promulgated to provide an additional registration pathway for aliens required to register under the existing statutory framework prescribed in 8 U.S.C. §§ 1301–1306. 90 Fed. Reg. at 11795. It also serves to partially implement section 7 of Executive Order 14159, Protecting the American People Against Invasion (Jan. 20, 2025), 90 Fed. Reg. 8443 (Jan. 29, 2025). 90 Fed. Reg. at 11795. Section 7 directs the Secretary, among other matters, to ensure that all previously unregistered aliens in the United States comply with 8 U.S.C. §§ 1301-1306. 90 Fed. Reg. at 11795. The IFR is reasonably related to these objectives.

Under 8 U.S.C. § 1302(a), "every alien" 14 years of age or older who remains in the United States for thirty days or longer is subject to registration if not already registered. Although 8 C.F.R. § 264.1 provides forms that satisfy an alien's registration requirements and means of

28

showing evidence of registration, not all aliens who are subject to the registration requirements have a straightforward way to take advantage of those forms. For example, in some cases, the acceptable evidence of registration at 8 C.F.R. § 264.1(b) is the result of an approved application only, which may leave denied or pending applicants without any acceptable evidence that they have complied with the requirement to register. The IFR provides a convenient additional method to comply with statutory registration requirements by prescribing a registration form available to all aliens regardless of their status, in addition to the other forms already listed.

An alien's willful failure or refusal to apply to register or to be fingerprinted is punishable by a fine of up to $5,000 or imprisonment for up to six months, or both. 8 U.S.C. § 1306(a); *see also* 18 U.S.C. §§ 3559, 3571. The same applies to an alien's parent or legal guardian's willful failure or refusal to register an alien under the age of fourteen. *Id.* The IFR simply provides an additional mechanism for aliens to comply with registration requirements. The IFR does not impose any new registration or fingerprinting obligations separate from the current statutory obligations. An alien who has previously registered consistent

29

with 8 C.F.R. § 264.1(a), or an alien who has evidence of registration consistent with 8 C.F.R. § 264.1(b), need not register again, although such an alien is subject to ongoing change of address reporting requirements under 8 U.S.C. § 1305(a) and 8 C.F.R. § 265.1.

Because the IFR is rationally connected with providing a registration pathway for compliance with the law, it is not arbitrary or capricious. Appellants are therefore unlikely to succeed on the merits.

## IV. The Balance of Equities and the Public Interest Favor Defendants

As established above, Appellants have not established irreparable harm, they lack standing, and they are unlikely to succeed on the merits. They are also unable to establish the last two prongs: the balance of equities and the public interest. *See Winter*, 555 U.S. at 20. And where, as here, Appellants are unlikely to succeed on the merits, it is of particular importance that the other three factors favor the Appellants; after all, "courts must take care not to unnecessarily 'halt the functions of a coordinate branch.'" *Trump v. Thompson*, 20 F.4th 10, 48 (D.C. Cir. 2021) (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 511 n.17 (1975)). Appellants must specifically establish that these last two factors favor the Appellants decisively; "where balancing the equities

'results roughly in a draw,' the 'sound disposition' of a request for injunctive relief 'depends on a reflective and attentive appraisal as to the outcome on the merits.'" *Republican Nat'l Comm. v. Pelosi*, Civ. A. No. 22-659 (TJK), 2022 WL 1604670, at \*5 (D.D.C. May 20, 2022) (quoting *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1326 (D.C. Cir. 1998)). As already shown above, Appellants are unlikely to succeed on the merits; "the sound disposition is to deny the motion" for an injunction. *Id.*

Here, the effect of an injunction would be to impede the Government's efforts to facilitate longstanding registration requirements and provide additional avenues for aliens to comply with the INA, which goes against the public interest. "Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (cleaned up). While Appellants may be correct that the statutory registration requirement has not been consistently enforced over that time and that there has not always been a path for aliens to register in all instances, this does not provide a basis on which to estop efforts to provide new avenues for compliance with those requirements.

31

"An administrative agency charged with protecting the public interest is not precluded from taking appropriate action [because of] lack of action on the part of public officials." *Washington Tour Guides Ass'n v. Nat'l Park Serv.*, 808 F. Supp. 877, 882 (D.D.C. 1992) (quoting *Pacific Shrimp Co. v. United States*, 375 F. Supp. 1036, 1042 (W.D. Wash. 1974)). "Plaintiffs may well have been allowed" to go without registering for lack of an option "for many years," but the "government cannot be estopped from fulfilling its duty to protect the public interest. . . ." *Id.* There is undeniably a strong public interest in the enforcement of statutes enacted by Congress and in providing opportunities for compliance with those same statutes, and there is a concomitant equitable harm associated with "halt[ing] the functions of a coordinate branch" of government, as would be the result here. *See Trump*, 20 F.4th at 48. Whatever interests and equities Appellants can bring to bear on this analysis, they cannot outweigh these strong public interest factors, let alone do so decisively.

The final two factors favored the Government in the initial analysis; they favor the Government even more strongly now that

32

Appellants seek an injunction pending appeal.  The "sound disposition" is to deny to the motion.

## V.    There Is No Basis for "Universal Relief"

Appellants insist (Supp. Mtn. at 21-22) that "universal relief" is warranted, but curiously cite only to Justice Kavanaugh's recent concurrence in *Trump v. CASA, Inc.*, 606 U.S. ___, 2025 WL 1773631 (2025), in support of this position.  The majority opinion from that case makes clear, however, that "'complete relief' is not synonymous with 'universal relief' [and] is a narrower concept."  *Id.* at *11 (citation modified).  As the majority made clear, any injunction which this Court may grant "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs" in the suit.  *Id.* at *11 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).  To the extent the further resolution of this matter results in a decision that an injunction is appropriate—an outcome Appellees strongly contest—that putative injunction should be narrowly tailored.

## VI.  There Are No Grounds for Expedited Consideration

As Appellees have made clear above, Appellants have failed to carry their burden of demonstrating irreparable harm.  Expedition is

only appropriate when the movant "demonstrate[s] that the delay will cause irreparable injury *and* that the decision under review is subject to substantial challenge."   D.C. Cir. *Handbook of Practice and Internal Procedures* 34 (2014) (emphasis added).   Not only have Appellants failed to establish irreparable harm, they offer no support for the second predicate, that the decision below faces substantial challenge.   Indeed, the district court has already stayed proceedings before it pending the resolution of the three appeals currently before this Court; there are no "strongly compelling" reasons favoring expedition.   *Cf. id.*

\*      \*      \*

## CONCLUSION

The Court should deny the motion for an injunction pending appeal, and it should deny the request for expedited consideration of the appeal. The Court should also dismiss the Second and Third Appeals.

JEANINE FERRIS PIRRO
United States Attorney

JOHNNY H. WALKER, III
Assistant United States Attorney

*/s/ Kartik N. Venguswamy*

KARTIK N. VENGUSWAMY
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-1790
kartik.venguswamy@usdoj.gov

*Attorneys for the United States of America*

35

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that foregoing complies with Federal Rule of Appellate Procedure 27(d)(2), in that it contains 6,665 words, is in fourteen-point font and utilizes Century Schoolbook typeface.

*/s/ Kartik N. Venguswamy*
KARTIK N. VENGUSWAMY
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I certify that on this 21st day of July 2025, the foregoing has been served on Appellants through the Court's CM/ECF system.

*/s/ Kartik N. Venguswamy*
KARTIK N. VENGUSWAMY
Assistant United States Attorney